CLARK, C. J., and WALKER. J., dissent in part.
Civil action heard on case agreed. The action was instituted by the State on relation of the solicitor of the district, as provided by the statute, to ascertain and collect amount due as the inheritance tax on the estate of Margaret Bridgers, deceased, who died on 29 August, 1907, making disposition, by will, of considerable estate. Among (250) other legacies was one of $3,500 to Richard W. Hogue, the then rector of St. James Church. The income to be paid him for life and on his death to his wife, Elizabeth, for life, and at her marriage or death the principal and any accrued income to paid equally, per stirpes, to the child or children, grandchild or grandchildren, who should be alive at the time of the death or marriage of their mother, etc., none of these parties of in by blood or marriage to decedent. The will, after *Page 204 
making various bequests of vested interests, the tax on which has been paid, makes disposition of the residuary estate in general terms as follows: "I direct the executrix of my estate, not sooner than twelve months after my death, to divide the rest and residue of my property and estate, real, personal, and mixed, of whatsoever nature and wheresoever the same may be, into as many shares as there may be sons and daughters of mine alive at the time of my death, and sons and daughters of mine, who have predeceased me, leaving a child or children, grandchild or grandchildren, alive at the time of my death, and widows alive at the time of my death of any son who may have predeceased me without leaving any child or children, grandchild or grandchildren, alive at the time of my death, all of which shares I give, devise, and bequeath to the Safe Deposit and Trust Company of Baltimore, Maryland, to be by them held and disposed of upon the following trusts, to wit: If it deem best to sell, convey, and covert into money any part or all of each share, and to receive the proceeds of such sale, to invest alike the same as it deems best; and if it deems best to sell and convey and convert into money any or all of such investments, and to reinvest the proceeds of such sale, to again sell, convey, and convert into money and reinvest when, as often, and in such manner as it sees fit; to receive the income from such share and from all such investments, and after paying out from such income from each share the taxes on such share and the costs of executing the trust as to such share, to dispose of the same as follows;"
At the time of her death the testatrix left her surviving, Emily, a daughter, Mary, a daughter, and George, a son, Annie, a (251) daughter-in-law and widow of a deceased son, and children of this marriage, and Bettie, a daughter-in-law and a widow of another deceased son, and children of this marriage. The will then makes minute and elaborate provision as to each of the five shares into which this residuum was divided pursuant to item 2, a sufficient synopsis of which appears as follows:
First share. To Emily Bridgers.
(1) Income to be paid Emily during life.
(2) At her death, share in fee to children surviving, and children of such as are dead, if any, per stirpes.
(3) At her death, if no children or grandchildren, share to be divided into as many shares as she shall have brothers and sisters surviving her, and brothers and sisters who have predeceased her leaving children or grandchildren, or a widow, to be held, etc.
Second share. To Mary Bridgers.
Same as No. 1.
Third share. To Annie (daughter-in-law).
Same as No. 1, except income given to her until marriage, and in *Page 205 
event of marriage, income during her life to be divided between her and her children and grandchildren of Robert, per stirpes.
Fourth share. To Bettie (daughter-in-law).
Same as No. 3.
Fifth share. To George Bridgers.
(1) Income to him for life.
(2) At his death leaving a widow, to her until marriage.
(3) At her marriage, income during her life to be divided between her and his children and grandchildren, per stirpes.
(4) At her death, as provided in share No. 1, subsections 2, and 3.
(5.) If no widow, as provided in share No. 1, subsections 2 and 3.
That the residuary estate consists entirely of bonds, stocks, and other securities, and the Safe Deposit and Trust Company is a corporation, resident in the city of Baltimore.
On the record the following questions were propounded as being necessary to a determination of the case: (252)
"First. Whether any inheritance tax is now due and payable upon the several shares composing the said residue of the estate, and also upon the bequest of $3,500 to the said Richard W. Hogue, his wife and issue.
"Second. Whether the said legacies are to be valued for the purpose of the inheritance tax as to the date of the death of Mrs. Margaret E. Bridgers, the testatrix; and, if not, as to what date the said value is to be ascertained and estimated.
"Third. If the said inheritance taxes are presently payable, is it the duty of Emily Bridgers, executrix, and has she the power to sell any stock or securities constituting the several shares of the said residue, in order to raise money to pay the said taxes?
"Fourth. Or, shall the said taxes be paid by the Safe Deposit and Trust Company of Baltimore, as trustee, or by the legatees to whom the several shares may be left in trust for their lives; and, if not, in what way and by whom are they to be paid?
"Fifth. Must the several shares into which the said residue is to be divided be separately set apart before the said tax can be levied or paid upon each of the said shares? and
Finally. Whether, under the inheritance tax law, or any of its provisions, the fund, or any part thereof, is liable to the charge of an inheritance tax, and in whose hands?"
Upon these the facts chiefly relevant, there was judgment in part as follows:
"Ordered and adjudged that no inheritance tax upon the said estate is now due and payable other than the inheritance tax which has already *Page 206 
been paid by the executrix upon the legacies or the estate which were directly bequeathed without conditions and limitations, and the court doth find that it is impracticable to ascertain at the present time, and until all of the legacies fall in and become due, the amount or proportion of said inheritance tax which shall be paid or by whom the same shall be paid.
"It is further ordered, adjudged, and decreed, that no inheritance tax shall be paid on the legacies and estates which were bequeathed and devised for life and in remainder until the falling in of said estates, and that the Safe Deposit and Trust Company of Baltimore, Maryland, (253) upon the falling in of each of said legacies or estates, shall, at such times as the said legacies or estates in remainder shall fall in and become due, pay such inheritance tax upon the value of the said legacies or estates as they or it existed at the date of the death of the testator and in such amounts and propositions as they or it at that time shall be due and payable, in accordance with the statute in force and effect at the death of the testatrix, Margaret E. Bridgers, having due regard to the number of legatees or beneficiaries, among whom at that time each of the said legacies, or bequests so bequeathed, shall be divided, allowing to each one of said legatees or beneficiaries an exemption of $2,000 upon the total amount of each of said legacies or bequests due to each of said legatees or beneficiaries at the falling in of said legacies or estates.
"And it is further ordered and adjudged that the said executrix, Emily Bridgers, shall be and is herewith permitted and allowed to distribute any and all of the said funds now remaining in her hands and be discharged as executrix of said estate without further charge or responsibility."
From this judgment the solicitor for the State excepted and appealed.
After stating the case: The statute of this State imposing a tax on inheritances, Laws 1911, ch. 46, secs. 6 to 21, inclusive, seems to be an exact reproduction of that of 1907, the law which prevailed at the time of the death of the testatrix. Should there be a difference which has escaped us, the law of 1907, will control as to the rate and amount of the tax, and the present statute as to the methods of appraisement and collection. Assuming that the statutes as to the same, and referring to that portion of the present law more directly relevant, section 6 of the act provides in part as follows: *Page 207 
"From and after the passage of this act, all real and personal property of whatever kind and nature which shall pass by will (254) or by the intestate laws of this State from any person who may die seized or possessed of the same while a resident of this State, whether the person or persons dying seized thereof be domiciled within or out of the State, or if the decedent was not a resident of this State at the time of his death, such property or any part thereof within this State, or any interest therein or income therefrom which shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor, bargainor, donor, or assignor, or intended to take effect in possession or enjoyment after such death, to any person or persons or to bodies corporate or politic, in trust or otherwise, or by reason whereof any person or body corporate or politic shall become beneficially entitled in possession or expectancy to any property or the income thereof, shall be and hereby is made subject to a tax for the benefit of the State, as follows, that is to say: Where the whole amount of the property, real or personal, which shall pass from a decedent to an heir at law, distributee, devisee, or legatee, by will, by the intestate laws of this State, or by deed, grant, sale, or gift made in contemplation of death, shall exceed in value the sum of $2,000, as determined by the appraisal hereinafter provided for, the tax upon the excess shall be as follows:
"First. Where the person or persons entitled to any beneficial interest in such property shall be the lineal issue or lineal ancestor, brother or sister of the person who died possessed of such property aforesaid, or where the person to whom such property shall be devised or bequeathed stood in the relation of child to the person who died possessed of such property aforesaid, at the rate of 75 cents for each and every hundred dollars of the clear value of such interest in such property; and this clause shall apply to all cases where the taxes have not been paid by the executor or administrator or other representative of the deceased person. The clerk of the Superior Court shall determine whether any person to whom property is so devised or bequeathed stands in the relation of child to the defendant."
Subsequent clauses of the same sections impose a higher rate where the kinship is more remote, and increase the same in (255) proportion to the size of the legacy, the section containing a proviso "that where the property is devised or bequeathed to a trustee for another or others, the rate of such inheritance tax to be paid on such devise or bequest shall be determined by the relationship of the cestui quetrust or cestuis que trustent to the testator."
Sections 7 and 8 provide that any legatees, etc., charged with a tax shall only be relieved by payment, and the same shall draw interest after two years from the death of the decedent. Section 9 requires that the *Page 208 
executors shall deduct the tax, at the rate prescribed, before payment, where the legacy, etc., is payable in money, and, in other cases, he must require payment of the tax at the appraised value, before he can be compelled to deliver the legacy; and if the bequest be of a specific legacy or article, he may sell the same or so much thereof as may be necessary, applying the proceeds in the administration of the estate, after paying the amount of the tax to the proper officer, etc.
By section 11, if the legacy is charged upon realty, the heir or devisee, before paying same to the legatee, shall deduct therefrom the amount of the tax and pay same to the executor, and such tax shall remain a charge on said real estate until it is paid; the section closing with the proviso that all taxes imposed by the act shall be a lien on the personal property of the estate on which the tax is imposed or upon the proceeds arising from the sale of such property from the time the tax is due, and shall continue a lien until the same is receipted for by the proper officer of the State.
The act further contains provisions for the appraisement of the property where same is required; constitutes the clerks of Superior Court the agents of the State for the collection of the tax, and authorizes suit to collect the same, either at the instance of such agent or of the solicitor of the district, a provision under which the present action is instituted, and, in certain instances, authorizes collection of the tax under the usual method of distress by the sheriff or tax collector.
Section 15, referring to the question of appraisement, contains, (256) among others, the provision, "and it shall be the duty of the appraiser, as often and whenever occasion may require, to make a fair and conscionable appraisement of such estates," and it shall be his further duty to assess and fix the cash value of all annuities and life estates, growing out of such estates, upon which annuities and life estates the inheritance tax shall be immediately payable out of the estate, at the rate of such valuation; and in this connection section 10 of the act provides: "If the legacy subject to said tax be given to any person for life or for a term of years or for any other limited period, upon a condition or contingency, if the same be money, the tax thereon shall be retained upon the whole amount; but if not money, application shall be made to the court having jurisdiction of the accounts of executors and administrators to make apportionment, if the case requires it, of the sum to be paid by such legatees, and for such further order relative thereto as equity shall require."
From a consideration of these provisions of the statute and authoritative decisions interpreting and applying laws of similar import, we regard it as established that the law is constitutional when viewed as an *Page 209 
excise or privilege tax on the transmission of property, and not as a tax on the property itself (In re Morris Estate, 138 N.C. 259); that while the tax may be made a personal charge in the case of vested interests, it is also payable out of the estate, or rather the portion of it subject to the duty, and that, for the purpose of estimating the amount of the tax, the property must be valued at the time of the death of the testator or intestate, and that it is assessable and payable at that time or as soon thereafter as the proper and orderly administration of the estate permits, and in any event within two years of such death whenever it is practicable to appraise the property by any of the recognized methods and ascertain the amount of the tax due. That, where it is not practicable to ascertain the amount of the tax, by reason of contingencies affecting the value of the estate subject to the same, or causing changes in the succession to holders subject to different rates, or where it is sought to make a contingent legatee subject to a personal charge for the tax before he has come into the enjoyment of the estate, and when, by reason of the contingency, he may never became the owner: in (257) such case the imposition and collection of the tax must be postponed until the amount of the tax in the one case or the person who may be charged with the other can be properly determined. Referring more particularly to the question of confining the effect of contingencies to those which render the ascertainment of the tax presently impracticably or impossible, it will be observed that, in section 6 of the act, the tax is imposed on the transmission of the title to any "person or persons or to bodies corporate or politic in trust or otherwise," and that the cestui quetrust is only referred to for the purpose of fixing the rate of taxation; that the tax is to be retained by the executor when the bequest is of money, and where the same is specific the legacy or the article may be sold by him in order to obtain the money to pay the tax, and that the tax imposed draws interest after the two years from the death of the testator or intestate and is a lien on all the property subject thereto. And in regard to life estates, where the same are vested, they are to be appraised and the tax is payable immediately out of the estate according to such valuation, and, under section 10 of the act, when such life or lesser estates are dependent on contingencies, if the legacy is money, the tax is presently payable from the whole amount, and if not money, the same may be "apportioned by order of the court, or such further orders may be made as equity may require"; and it may be well further to note that where the assessment and payment of the tax is necessarily postponed, under the inherent powers of the court and under and by the virtue of section 10, when the same is applicable, and especially where the fund is directed to be transferred from this *Page 210 
jurisdiction, the court can and should make proper orders and decrees to secure the ultimate payment of the tax, either by causing a sufficient amount of the same to be invested within the jurisdiction or by requiring a bond for that purpose, renewable from time to time, as the right and justice of the case may require. In respect to the exemption, the tax is imposed only on the excess over $2,000 where the "whole amount of the property, real or personal, which shall pass from a decedent to an heir at law, distributee, devisee, or legatee, by will," etc., and on (258) the same or similar phraseology the better considered cases allow the exemption in case of each legacy, and where, as in this case, a fund is bequeathed with income for life and payable out of the same, the legacy is entire and the value of the remainder is ascertained by appraising the value of the life estate, when this may be required by reason of a different rating, and deducting such value from the entire fund bequeathed and subject thereto. 27 A. and E. (2 Ed.), p. 356, where it is said: "Life estates and annuities are to be appraised at their cash value, according to the annuity tables. The value of a remainder is ascertained by deducting the value of the preceding life estate from the value of the whole estate." It would serve no good purpose to pursue or endeavor to explain or apply the manifold and varying decisions of the courts construing laws on this subject, varying chiefly by reason of amendments passed for the purpose and which would, as a rule, be of no aid to a correct conclusion in this jurisdiction.
In our view, the positions as stated will be found in accord with the better considered cases construing statutes similar to or bearing nearer resemblance to our own. In re Morris, supra; Attorney-General v. Pierce,59 N.C. 240; Knowlton v. Moore, 178 U.S. 41; In re Davis Estate,167 N.Y., 227; In re Vanderbilt Estate, 172 N.Y. 69; Frank Ayers v. Chicagoand C. Trust Co., 187 Ill. 42; Minot v. Winthrop, 162 Mass. 113;Dow v. Abbott, 179 Mass. 238; S. v. Pabst, 139 Wis. 561; Nunnemacher v.State 129 Wis. 190; 27 A. and E., "Succession Taxes," p. 337 et seq.;
37 Cyc., p. 1574.
Applying these principles to the facts presented: in reference to the legacy to the Rev. Richard W. Hogue, this is a pecuniary legacy in the sum of $3,500, in trust to pay him the income for life, then to his wife for life, and on their death the principal is payable per stirpes to his surviving children and grandchildren, etc. Here the fund is entire, and if required, the value of the life interest of the legatee could be readily ascertained. Inasmuch, however, as the life tenant and the remaindermen are all strangers to the decedent and all the interest are subject to the same rate and the tax payable out of the fund there is no occasion to estimate the value of the life estate. The executor, after deducting *Page 211 
the sum of $2,000, the exemption allowed by the statute, will (259) retain the tax on the residue at the proper rate and pay the same to the clerk of the Superior Court or other proper officer as the court below may direct.
As to the share bequeathed in trust to pay the interest to Emily Bridgers for life, with remainder to the lineal issue of the decedent: Here the legacy is entire, the rate is the same, all being subject to 3/4 of 1 per cent. The $2,000 exemption will be deducted and the tax at the proper rate will be paid to the clerk as aforesaid or as the court, by order, may direct. And the same ruling disposes of the share bequeathed to the daughter Mary, and a like disposition will be made of the share bequeathed to the son George, with remainder over to lineal issue, etc.
As to the share bequeathed in trust for Annie, the widow of R. R. Bridgers, and for Bettie, the widow of Preston L., the said R. R. Bridgers and Preston L. Bridgers being sons of the testatrix, the income was directed to be paid to them for life or widowhood, and if this was subject to a different rate from the other legatees sharing in these portions the payment of the tax would have to be postponed, because an estate for "life or widowhood" is incapable of present valuation, and there would be no practicable way of determining the amount of the life estate on which the higher or differing rate should be paid. Don Passos Inheritance Tax Law, sec. 53.
In our view, however, these legatees should each be considered and dealt with as one standing in the relation of child to the decedent under clause 1, sec. 6, of the statute. This clause imposes a tax of 3/4 of 1 per cent on legacies to the lineal issue or lineal ancestor of decedent or to his brother or sister or to "one who stood in relation of child to such decedent," this in case of question to be determined in the first instance by the clerk of the Superior Court. This provision, in our opinion, refers and was intended to refer to the case of widows or widowers, and other cases could be suggested to the decision of the courts and to relieve them, when legatees, from the higher rate imposed on strangers to the blood of the decedent in all cases where they were deserving (260) of this favor. From a perusal of the will, showing the tenderest concern for these legatees, and from their known deserving, these daughters-in-law should be considered as standing in the relation of children and only be subject to the lighter tax imposed on the lineal issue of deceased. From this it follows that the life tenants, the daughters-in-law, and the remaindermen of these shares, who are the lineal issue of the testatrix, are one and all subject to the same tax rate, and the tax, as stated, being presently payable out of the fund, there is no occasion for estimating the value of the life estate. The exemption *Page 212 
of $2,000 will therefore be deducted from each share and the tax of 3/4 of 1 per cent on the residue shall be presently paid to the clerk or as the court may decree or direct pursuant to law.
The entire record and statute shows that the trustee should pay these taxes, which are all now due, out of the funds subject to the duty, and is responsible for such payment and is clothed with the right to sell and dispose of such portion of each share as may be necessary for the purpose; and under the extensive powers of conversion and sale conferred on the trustee by the terms of the will, it has the right to sell and dispose of any portion of each fund that it may deem best in order to obtain the money for such purpose, and the receipt of the State officer shall be a valid voucher in a proper accounting and settlement of the trust estate.
For the reason stated, the judgment of the Superior Court will be reversed, and this will be certified, to the end that the five shares into which the residuum is divided shall be valued as if at the death of the testatrix, the exemption of $2,000 deducted from each share and a tax of 3/4 of 1 per cent on the residue be paid into court, with costs of proceedings. That the tax on the legacy of the Rev. R. P. Hogue be also paid, first deducting the exemption, at the rate of 5 per cent, as directed by the statute.
Reversed.