IN RE INHERITANCE TAX FROM THE ESTATE OF JOHN H. WHITE.

(Filed 24 February, 1915.)

1. Statutes—Interpretation—Inheritance Tax—"Relation of Child."

The inheritance tax law, imposing a higher rate of taxation and allowing no exemption as to those whose beneficial interest in the property is not derived as the lineal issue or lineal ancestor or husband or wife of the person who died possessed of such property, etc., by making the express provision that the lower rate and exemptions would also apply "where the person to whom such property shall be devised or bequeathed stood in the relation of child" to such person, extends the lower rate and exemptions to persons who are shown to have been regarded by the testator or ancestor as if they were his children, or lived in his family or associated with him as such, in mutual recognition of the assumed relationship, and without restriction to cases of formal adoption.

2. Same—Jurisdiction—Clerks of Courts—Courts.

The inheritance tax law, by providing that the "clerk of the Superior Court shall determine whether any person to whom property is so de-

vised or bequeathed stands in the relation of child to the decedent," refers and was intended to refer the question of such relationship to the courts; primarily to the sound legal discretion of the clerk, as a mixed question of law and fact.

APPEAL by petitioner from *Peebles, J.,* heard 19 August, 1914, from BERTIE.

Petition to appraise and correct the assessment of inheritance tax on devise by the will of deceased to petitioner, John R. Lawrence, heard on appeal from clerk Superior Court.

The petitioner, claiming to stand in the relation of child of the testator, subject to the smaller tax imposed by the law, and that he is entitled to the exemption allowed in such cases, filed his petition before the clerk and alleged and prayed:

"First. That John H. White, deceased, died on or about 12 July, 1913, leaving a last will and testament which has been admitted to probate and is recorded in Bertie County, and in which he appointed your petitioner as his executor under said will and testament; and your petitioner duly qualified as such executor on 20 July, 1913, and is now the executor of said estate.

"Second. That said John R. Lawrence is the principal legatee and devisee in said will and testament, the same being referred to and made a part hereof for all purposes; and on 13 June, 1914, the said clerk of the Superior Court of Bertie County duly appointed T. C. Bond as the appraiser to appraise the said estate for the purpose of assessing the inheritance tax under the provisions of chapter 201, section 15, of the Public Laws of 1913 of North Carolina, and the said Bond duly qualified, assessed said estate, and has filed his report in this court bearing date of 26 June, 1914; and the same is referred to and made a part hereof for full description of same.

"Third. That the said John R. Lawrence is the only devisee and legatee in said will and testament and in the report of said assessor whose share is liable for the inheritance tax as provided for in chapter 201 of Public Laws of North Carolina, 1913.

"Fourth. That the said John R. Lawrence was the nephew and foster-child of the said John H. White, deceased, and was the son of the sister of said White and her husband, Thomas Lawrence. That Thomas Lawrence died when your petitioner was about 6 years of age, leaving surviving him his wife and three small children, John R. Lawrence, Bettie Lawrence, and Ida Lawrence, and without leaving any estate and property. That John H. White, who lived and died a bachelor, took and adopted his sister and her child, John R. Lawrence, into his household as members of his family, and the two small girls, Ida and Bettie Lawrence, went to live with their aunt, Bettie Wilson. That your petition-

er's mother, the sister of said White, cared for his house and did the other duties pertaining to the same until the time of her death, which occurred when your petitioner was 9 years, and your petitioner remained there, also cared for by his uncle and mother.

"That before the death of his mother, the said White promised her that he would adopt the said John R. Lawrence, raise him, and leave him all of his property at the time of his death, and after the death of his mother your petitioner remained with the said White until he reached the age of 21 years, and was treated as a son by the said White and in turn treated the said White as he would have his father. That the said John R. Lawrence worked in the field of said White, never receiving any compensation therefor, other than his board and clothes and a little spending money, just as any other man in similar circumstances in said locality would have treated a son, and he nursed and cared for said White when he was sick and was in turn nursed and cared for by the said White. That the said White announced to the world that he had adopted his nephew as his child and heir, and he was so regarded by the neighbors in that community, though there was never any actual 'legal adoption.'

"That the said White repeatedly told him that he was going to leave him his property when he died, and he raised and brought up your petitioner to believe and feel that this would be the case.

"That during the said period of time the household of said John H. White, deceased, consisted of said White, your petitioner, and a hired man, James Q. White, and the other servants around the house and farm.

"That the said White was very affectionate to the said Lawrence, and said Lawrence was in turn very affectionate with his uncle, because he felt that he stood in the relation of parent to him, and was, practically speaking, the only father he ever knew in his life, as his own father died before he could remember much about him.

"Fourth. That your petitioner reached the age of 21 years old, and was advised by said White that he should go away and learn something of the world, and that he was willing to allow him to go in the northern part of the country and work, provided that he would return home and care for the said White whenever he needed him. That your petitioner went up into the Northern States, and followed the trade of boiler-maker and continued this work for several years. That he and the said John H. White always kept in touch with each other, and your petitioner generally came home once every year to see his uncle and foster-parent, and was in turn visited by the said White at various intervals. The aforesaid relation of father and child was always continuing to exist during the said period, and correspondence by the use of the mail was kept up between them during this period.

"That when your petitioner would return home to visit his uncle, and when said uncle and foster-parent would visit him, they would frequently advise together about the property and condition of said White and Lawrence, the said Lawrence aiding said White by suggestions, and said White aiding said Lawrence in this and other ways; and the said White always treated said Lawrence as his son and heir to his property.

"That about two years before the death of said White he advised your petitioner that he was getting too feeble and old to care for himself, and desired that he come home and take charge of him and his property until the time of his death, as he was the only child he ever had and the one he felt nearest to in the world.

"That your petitioner had married in the meantime and had his wife and two small children, and was engaged in the millinery business in Gloucester, New Jersey. His said business was prosperous and in good condition, but in obedience to the summons of his said foster-parent and uncle, he immediately sold the same out at a great sacrifice, and returned home to care for his said uncle.

"That from then on to the death of said White he and his wife remained at home of said White and cared for, nursed the said White, who was very feeble and old, in the same manner as he would have cared for his own parents, and cared for said farm and other property of said White, managed the same and had charge of said property in the same manner as said White would have had charge of same if he had been able. That during this period the said White frequently advised him that he regarded him as the only child he ever had in the world, and that upon his death he would receive the bulk of his property and estate. And the aforesaid relation of father and child extended up to the death of said White, which occurred in 1913.

"Fifth. That your petitioner is advised and believes, and so avers, that because of facts above stated the said relation of father and child between White and himself began when your petitioner was about 6 years of age and continued until the death of said White in 1913, and they stood in this relation within the meaning of the inheritance laws of the State of North Carolina, and that in assessing and appraising said estate of said White, and the property devised by said White to your petitioner, that the basis of the tax should be at the rate of $1 per $100 instead of $3 per $100, as provided for for persons in the relation of nephew and uncle."

Upon the hearing, the clerk found the facts as stated in the petition to be true, but held, as a conclusion of law thereon that defendant did not stand in this relation of child within the meaning of the inheritance tax law. On appeal, the judge of the district approved and affirmed the findings and judgment of the clerk, and petitioner appealed to this Court.

*Pruden & Pruden, Gilliam & Davenport for appellant.*
*No counsel contra.*

HOKE, J., after stating the case: The law imposing a tax on inheritances, sec. 6, subsec. 1, provides, among other things: First. Where the person or persons entitled to any beneficial interest in such property shall be the lineal issue or lineal ancestor or husband or wife of the person who died possessed of such property aforesaid, or where the person to whom such property shall be devised or bequeathed stood in the relation of child to the person who died possessed of such property aforesaid, at the rate of $1 for each and every $100 of the clear value of such interest in such property; and this clause shall apply to all cases where the taxes have not been paid by the executor or administrator or other representative of the deceased person. The clerk of the Superior Court shall determine whether any person to whom property is so devised or bequeathed stands in the relation of child to the decedent," and allows an exemption of $2,000 each on persons coming within the class described.

On persons taking beneficial interest in property by devise, inheritance, etc., and not coming within this description, a higher tax is imposed, and no exemption allowed. Referring to the language of the statute, it is clear that the words used, "or where the person to whom such property shall be devised or bequeathed stood in the relation of child to the person who died possessed of such property," are in addition to lineal issue or ancestors, these last being expressly named, and that they are not restricted to persons formally adopted as children, for this could have been readily specified and expressed. The words, therefore, are more inclusive and, in our opinion, on perusal of the entire provision, including "and the clerk of the Superior Court shall determine whether any person to whom property is so devised or bequeathed stands in the relation of child to the decedent," the law referred and intended to refer the question to the courts: primarily to the sound, legal discretion of the clerk, as a mixed question of law and fact, and that the words extend to and include all meritorious cases where the parties had assumed and continued to live in the relationship of parent and child or where they lived in mutual recognition of such relationship. This was held to be the correct construction of the statute in the recent case of *State ex rel. Shaw, Solicitor, v. Bridgers,* 161 N. C., pp. 246, 259, where the words in question were held to "include and apply to daughters-in-law who were in every way deserving and were treated and recognized as children by the testatrix." Speaking to the question in that case, the Court said: "In our view, however, these legatees should each be considered and dealt with as one standing in the relation of child to the decedent under

clause 1, sec. 6, of the statute. This clause imposes a tax of ¾ of 1 per cent on legacies to the lineal issue or lineal ancestor of decedent or to his brother or sister or to 'one who stood in relation of child to such decedent,' this, in case of question, to be determined in the first instance by the clerk of the Superior Court. This provision, in our opinion, refers and was intended to refer to the case of widows or widowers, and other cases could be suggested to the decision of the courts and to relieve them, when legatees, from the higher rate imposed on strangers to the blood of the decedent in all cases where they were deserving of this favor. From a perusal of the will, showing the tenderest concern for these legatees, and from their known deserving, these daughters-in-law should be considered as standing in the relation of children and only be subject to the lighter tax imposed on the lineal issue of deceased." And the position has been recognized as sound in principle in other jurisdictions. Ross on Inheritance Taxation, sec. 138; 37 Cyc., pp. 1571-72.

The interpretation adopted is required by the general and inclusive nature of the descriptive words, "one who stood in the relation of child to decedent," and is more insistent in view of the additional clause, "and the clerk shall determine whether any person to whom property is bequeathed stands in the relation of child."

On the facts, as established, we are of opinion that the petitioner stood in the relationship of child to the decedent, within the meaning of the law, and this will be certified, that judgment may be so entered and the taxes assessed and exemption allowed accordingly.

Reversed.