The above cases were consolidated, they present the same legal question.
The Department of Revenue of the State of North Carolina assessed the real estate, lately belonging to W. H. Burwell, who died in the year *Page 359 
1917, at $22,897.50, and the same department assessed the real estate, to wit, a storehouse, belonging to the estate of the late E. G. Davis, who died 13 April, 1922, at $36,000.00. Both said tracts of real estate, the one being a farm and the other a storehouse, were situated in Vance County, North Carolina. The farm of Mr. Burwell was valued for property taxation in the year 1917, by the taxing authorities at $10,775.00, and the storehouse belonging to the estate of E. G. Davis was valued for property taxation in the year 1922, by the lawful county authorities at $23,000.00.
The question is: Did the law in reference to inheritance tax give the right to increase the valuation of the real estate fixed by the county authorities? Appellants say "No," the Appellee says "Yes."
Article V, sec. 3, of the State Constitution is as follows: "Laws shall be passed taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and, also, all real and personal property, according to its true value in money. The General Assembly may also tax trades, professions, franchises, and incomes, provided that no income shall be taxed when the property from which the income is derived is taxed." . . . (See Public Laws, 1925, Constitution of N.C. Art. V, sec. 3, amendment added.)
Appellants in their brief say that this provision has been held for 50 years to require all taxes levied upon property to be upon a uniform rule. This principle is sound. It is a wholesome provision — there should be no discrimination in taxation. All classes should be taxed alike, there should be no favorites, but equality and uniformity. Equal rights to all, special privileges to none. These are fundamental principles of all stable government. The only exemption from the uniform rule in the above article was that in regard to homes, submitted to the people under Public Laws of N.C. 1923, ch. 240, and adopted at the 1924 fall election. This was to encourage home owning, to make government more enduring by helping to create a land of home owners. The home is the foundation of our civilization. It is the slogan of the American Building Loan Association: "The American home is the safeguard of American Liberties." The principle contended for by appellants has no application in reference to inheritance taxes. The method provided in the Revenue Act of 1903, ch. 247, sec. 6-21
for the ascertainment, computation and collection of an inheritance, transfer or succession tax was held constitutional by a unanimous Court.Brown, J., in an able and interesting opinion, In re Morris' Estate,138 N.C. p. 261, says: "The inheritance or succession tax is of very ancient origin. It is no new invention of the legislative power for the purpose of putting money in the public coffers. Gibbon, the historian, traces its origin to the Emperor Augustus, and says it was suggested by him to the senate as a means *Page 360 
of supporting the Roman Army; that it was imposed at the rate of five per cent upon all legacies or inheritances above a certain value; but that it was not collected from the nearest relatives upon the father's side, and that the tax was the most fruitful as well as the most comprehensive. 1 Gibbon's Rome, 133; Encyc. Brit. 8th Am. Ed., 65, title Taxation. It was called `vicessima hereditatum et legatorum.' In this country the tax is variously called an inheritance tax, a legacy tax, a transfer tax, and a succession duty. It is defined as follows: `A burden imposed by government upon all gifts, legacies, inheritances and successions, whether of real or personal property, or both, or any interest therein, passing to certain persons (other than those specially excepted) by will, by intestate law, or by deed or instrument made inter vivos intended to take effect at or after the death of the grantor.' Dos Passos, (2 ed.) sec. 2."
Ross on Inheritance Taxation (1912), part sec. 6, says: "Sometimes the inheritance tax is denominated an excise of duty upon the right or privilege of taking property by will or descent, in contradistinction to a direct tax on property. It `is not a tax upon property or property rights in any sense, but purely an excise tax levied upon the transfer or transmission, and merely measured in amount by the amount of the property transferred.'" Part sec. 9, says: "Inheritance taxes are of ancient origin. Two thousand years ago they were imposed in Rome, the idea perhaps having been introduced from Egypt; and in the middle ages traces of such taxes were observable as an incident of feudal tenures. Today England, France, Germany — in fact, practically all the nations of Europe — have adopted some system of inheritance taxation; so, indeed, have many of the colonies of Great Britain, the Spanish-American countries, Japan, and other nations of the world. In the United States, before the end of the eighteenth century, the Federal Government began the taxation of inheritances."
It was adopted in Great Britain in 1780, in Pennsylvania in 1826, in New York in 1885, in North Carolina as early as 1847, and the present system, in part, in 1901. Public Laws, chap. 9, sec. 12 et seq., and is now the law in almost every State in the Union. The other states and territories are: Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, Maryland, Mississippi, Rhode Island, Utah, New Mexico, Philippine Islands, Porto [Puerto] Rico, Territory of Alaska and Territory of Hawaii. *Page 361 
The justice of the tax has been approved by almost all the nations of the earth and the states of the union.
In 26 R. C. L., part sec. 167 (p. 296), it is said: "An inheritance tax in any of its customary forms is not a tax on the property of the decedent with respect to which it is levied, but it is an excise imposed on the privilege of transmitting or receiving property upon the death of the owner, and consequently is not subject to any of the constitutional limitations upon taxes or property found in the State Constitution." And in part sec. 168 it is said: "In the absence of a special constitutional provision to the contrary there is no doubt that the levy of inheritance taxes is within the general discretionary power of the state legislatures to select the subjects of taxation, subject, of course, to the limitation of raising money for the public use only."
In 1 Cooley on Taxation (4 ed.), part sec. 48, p. 136, it is said: "An inheritance tax, also called a legacy or succession tax, is, in its common form, an excise on the privilege of taking property by will, or by inheritance or by succession in any other form upon the death of the owner. Such taxes are of great antiquity. They are indirect rather than direct taxes, and are in the nature of an excise tax rather than a property tax."
In 4 Cooley on Taxation (4 ed.), part sec. 1695, p. 3406, the following is laid down: "And succession to an inheritance may be taxed as a privilege, notwithstanding the property of the estate is taxed, and taxes on property are required by the constitution of the state to be uniform."Gelsthrope v. Furnell, 20 Mont. 229, 51 P. 267, 39 L.R.A., 170; Eyrev. Jacob, 14 Gratt. (Va.), 422. See State v. Alston, 94 Tenn. 674,30 S.W. 750, 28 L.R.A., 178.
The tax levied is not a tax upon land, within the meaning of the Constitution; but it is an excise tax levied upon the succession or transfer or the right to transmit property.
It is not a natural right of a person to take property by devise or descent, but it is a creature of the law — a privilege by grace of the legislature. The inheritance tax not being a tax on land, the value of the land that is devised or descended can be ascertained or fixed by legislative will. Natural justice would require that the condition imposed must operate equally upon all in the same class. This is well settled law in this jurisdiction. Pullen v. Comrs., 66 N.C. 363; In re Morris'Estate, supra; S. v. Bridgers, 161 N.C. 247; Norris v. Durfey, 168 N.C. 321;In re Inheritance Tax, 168 N.C. 356; S. v. Scales, 172 N.C. 915;Corporation Commission v. Dunn, 174 N.C. 679; Bank v. Doughton, 189 N.C. 50. The position taken in appellee's brief, we think, well stated and is the law: "All the statutes of North Carolina levying an inheritance tax from 1917 to 1925, inclusive, *Page 362 
fix the rate of tax at so much per cent `for each one hundred dollars of the clear market value of such interest in such property.' Section 6, chapter 231, Laws of 1917, and section 6, chapter 34, Public Laws of 1921 (the acts particularly material to this discussion). It has been determined by this Court that the clear market value is to be ascertained as of the time of the death of the testator or intestate. S. v. Bridgers, supra. Manifestly, if the Department of Revenue should be bound by the valuation of the property of W. H. Burwell by assessors in 1915, this would be directly contrary to the provisions of the act upon which the value of such property should be appraised under the inheritance tax law. The method of appraisal and ascertainment of value has been approved in cases above cited, more particularly in S. v. Bridgers. The clear market value of a particular property in 1915, in very many instances would not be the clear market value of such property in 1917, and the clear market value of property in 1921, in many instances would not be the clear market value of property in 1922. The Court has fixed the period at which this clear market value is to be ascertained at the death of the testator or intestate. It is, therefore, in clear effect a determination that this clear market value must be ascertained as of that time. The value of property as ascertained by the tax list is not competent evidence to show the value of the land, as assessors are not witnesses in the case, sworn and subject to cross-examination in the presence of the jury. Cardwell v. Mebane,68 N.C. 485; Daniels v. Fowler, 123 N.C. 35; R. R. v. LandCo., 137 N.C. 330."
We cannot see under the plain language of the act, "clear market value," which is to be ascertained at the death of the owner, how the prior assessment can be binding. If we should so hold, we would nullify the written law. The fixed taxable value by the local authorities should have persuasive consideration with the appraiser and the Commissioner of Revenue. In the administration of law of this kind, due consideration should be given to local authorities who have had to, under oath, pass on similar matters. From a great wealth of authorities, we conclude that the contention of appellants cannot be sustained.
From a careful examination of the acts relevant here, the Legislature has taken the care to safeguard the administrator or executor, and from the appraisal, if not satisfactory, appeal lies and the machinery applicable.
The judgment below is
Affirmed. *Page 363