# Countess de Noailles' Estate.

*Taxation—Collateral inheritance tax—Trusts and trustees—Situs of securities—Foreign resident.*

Where a widow domiciled in France dies without lineal descendants, the State of Pennsylvania cannot collect a collateral inheritance tax on bonds, mortgages and other securities held by a trustee in Pennsylvania, under a deed of trust executed sixty years before the decedent's death, where it appears that the deed created a mere passive trust and that the bonds, mortgages and securities, seven-eighths of which represented accumulations, were always at the decedent's absolute disposal, and constituted part of her personal estate which passed directly to the ancillary administrators of her estate in Pennsylvania, and not to any beneficiaries, under the deed of trust.

Argued March 18, 1912. Appeal, No. 325, Jan. T., 1912, by the Commonwealth of Pennsylvania, from decree of O. C. Phila. Co., April T., 1911, No. 739, dismissing exceptions to adjudication in Estate of Anna Maria Helena (Countess de Noailles) deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*J. Lee Patton,* for appellant.—It has long been held that the situs of intangible personal property held by resident trustees, for nonresident cestui que trustent, is in that state, where the trustee in whom is vested the legal title and ownership, is domiciled: Guthrie v. Railway Co., 158 Pa. 433; Price v. Hunter, 21 W. N. C. 306; West Chester School District v. Darlington, 38 Pa.

157; Carlisle Borough v. Marshall, 36 Pa. 397; Orcutt's App., 97 Pa. 179; Com. v. Kuhn, 2 Pa. C. C. R. 248; Lewis's Est., 203 Pa. 211; Singer v. Guarantee Trust & Safe Deposit Co., 24 Pa. Superior Ct. 270.

*John G. Johnson,* with him *Maurice Bower Saul,* for appellee.—It is argued by the Commonwealth that personalty can have a situs other than its legal situs, for the purpose of taxation. The authorities, however, negative the Commonwealth's contention. As early as 1881 the court denied the power of the Commonwealth under existing laws to tax personalty of a nonresident: Orcutt's Appeal, 97 Pa. 179; Shoenberger's Est., 221 Pa. 112; Lines's Est., 155 Pa. 378; Williamson's Est., 153 Pa. 508; Coleman's Est., 159 Pa. 231; Handley's Est., 181 Pa. 339; Vanuxem's Est., 212 Pa. 315; Dalrymple's Est., 215 Pa. 367; Lamberton's Est., 440 Pa. Superior Ct. 548.

OPINION BY MR. JUSTICE BROWN, April 29, 1912:

The domicile of the decedent at the time of her death was in France. She was a widow and left no lineal descendant. She owned real estate in this state which was appraised at $17,500, and, as there was no conversion of it into personalty by the terms of her will, its liability to collateral inheritance tax was conceded. In 1853 she placed a certain fund in the hands of trustees in the city of Philadelphia, and when she died it was held by their successors. Seven-eighths of it represented accumulations, and the whole of it consisted of bonds, mortgages and obligations of individuals and corporations. From the disallowance of the Commonwealth's claim to collateral inheritance tax on this personal fund it has appealed.

The deed of trust executed by the decedent does not seem to have been before the court below, and we are ignorant of its terms and provisions. It does appear, however—apparently by admission—that she could

have terminated the trust at any time and taken possession of all the trustees held for her. Aside from mere compensation for their services, they had no beneficial interest in the fund, even though the legal title to the securities may have been in their names. During all the nearly sixty years' duration of this passive trust the decedent was the real owner of the securities, and she died as such owner while domiciled in a foreign country. Up to the time of her death everything held by the trustees was at her absolute disposal and constituted part of her personal estate. At the time of her death what was the situs of this fund? If it was in France, which was her home, it is not taxable here. The earnest contention of the learned counsel for the Commonwealth is that its situs was here. As just stated, we do not have the benefit of any light which the deed of trust might throw upon this question, and, with the admitted right of the decedent to absolutely control the fund at all times, was it, at the time of her death, within the rule or maxim, mobilia sequuntur personam? We are of opinion that it was.

While as a general rule the situs of personal property follows the owner, some species of personalty may, for particular purposes, have a situs distinct from the legal one. This was recognized in Small's Estate, 151 Pa. 1, because the property of the limited partnership in this state, in which the foreign decedent held stock, "was largely made up of lands, merchandise, flour, grain and other personal property which had a visible and tangible existence and an actual situs in this state." Great reliance seems to be placed on this case as an authority sustaining the claim of the Commonwealth for collateral inheritance tax on the bonds, mortgages and obligations which were held here for the Countess de Noailles; but, in relying upon it, counsel seem to overlook what was further said by Mr. Chief Justice Sterrett: "As a general rule, intangible personal property of a nonresident, such as bonds, mortgages and other choses in action, is

governed, as to its situs, by the fiction of law above noticed, and hence such property is not subject to collateral inheritance taxation under our laws, because it is not 'situated within this state.' " Lewis's Estate, 203 Pa. 211, is also pressed upon us as a controlling authority for the Commonwealth, and it is proper that we should show it is not. We have heretofore said of it that it was decided upon its own peculiar facts and is not to be stretched: Shoenberger's Estate, 221 Pa. 112. One of the two reasons given by the court below in Lewis's Estate for holding that it was liable to collateral inheritance tax here was that, as the executor and legatees had requested and consented that a complete administration and distribution of the whole estate comprehended in the account should be had in Luzerne county, under Pennsylvania laws, by a Pennsylvania court, and not as is usual in mere ancillary accounting, transmitted to a foreign forum, they could not have the benefit of this departure from the general rule without taking that benefit with its burdens. It was for this reason that the decree was affirmed. The first reason given by the court below was not sustainable, as clearly appears from what was decided in Lines's Estate, 155 Pa. 378. Lines died in the city of Easton and had been domiciled there for thirty years before his death. In 1887 he executed and delivered to the Union Trust Company, a New York corporation doing business there, a deed of trust, which included one hundred and eighteen mortgage bonds of $1,000 each, issued by a Missouri railroad company, and two hundred and eighty-one shares of the capital stock of a New Jersey corporation doing business there. These securities were delivered to the trustee, and, on the books of the two corporations, were transferred to "The Union Trust Company of New York, in trust for Jesse Lines and others." According to the provisions of the deed, the trustee was to hold the securities, collect the interest and income thereof and pay the same to Lines

during his natural life, and, upon his decease, divide the
bonds and stocks by transferring one-half of them to
certain of his nephews and nieces and the other half
to a putative son.   The trust deed contained a clause
which gave to Lines the right and power to alter,
change, modify or revoke the disposition to be made of
the property after his decease; but this right was never
exercised.   The trustee collected and paid over to Lines
the income of the trust securities during his, life, and
after his decease divided and distributed the corpus of
the estate, consisting of the said securities, to benefici-
aries entitled thereto according to the provisions of the
deed.   In holding that the Commonwealth had a right
to collect a collateral inheritance tax on these securi-
ties, it was said: "Mr. Lines was not only the beneficial
owner of the securities prior to and at the time of his
decease, but under the reserved power of modification,
revocation, etc., he had absolute control of the disposi-
tion to be made of the securities upon his decease.   At
any time prior thereto, he could have modified or re-
voked the trust in favor of the beneficiaries named in
the deed.   It is true the legal title to the securities was
in the trust company, but aside from mere compensa-
tion for its services, as custodian of the property, the
company had no beneficial interest therein.   In any
proper sense of the term, the securities were the per-
sonal property of Mr. Lines.   They were his to enjoy
during his lifetime, and his to dispose of, in any manner
he saw fit, at any time prior to his decease.   He chose
to leave the trust in favor of the beneficiaries unaltered
and unrevoked, and, as he intended, it took effect, in
enjoyment, immediately after his decease.   Moreover,
the securities were that kind of personal property, the
situs of which follows the owner."   If Lines had been
domiciled in New York, and the securities had been held
for him by a trustee here, they would not, on the correct
reasoning of Mr. Chief Justice STERRETT, have been
liable to collateral inheritance tax here.   The estate of

the Countess de Noailles in the hands of the trustees here is more than the converse of the Lines estate. The deed of trust was subject to her revocation at any time, and the entire fund, made up largely of accumulations, did not pass to any beneficiaries named in the deed, but directly to the ancillary administrators of her estate.

Decree affirmed at appellant's costs.