RHODE ISLAND HOSPITAL TRUST COMPANY, EXR., v. R. A. DOUGH-
TON, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 27 February, 1924.)

1. **Taxation—Statutes—Corporations—Shares   of   Stock—Transfer   of
Shares—Inheritance.**

Under the provisions of C. S., 7772, an inheritance or transfer tax is imposed upon the right of nonresident legatees or distributees to take by will or to receive, under the intestate laws of another State, from a nonresident testator or intestate, shares of stock in a corporation of another State domiciled here, under the laws of this State, as .a condition precedent to the right to have said stock transferred on the books of the corporation having the statutory proportion of 'its property located within this State and conducting its business here.

2. **Same—Constitutional Law.**

The provisions of C. S., 7772, imposing, among others, an inheritance tax upon nonresident distributees under the will of a nonresident testator or upon his distributees under the canons of descent, who are nonresidents, in a corporation domesticated and operating with two-thirds of its

property here, under our statute, are not in conflict with Article I, section 17, of the State Constitution or of the Fourteenth Amendment to the Constitution of the United States.

**3. Same—Property Valuations.**

The tax imposed upon the transfer of shares of stock in a corporation domesticated under our statute, where the decedent and the legatees or distributees are all nonresidents, is upon the right of succession or on the right of a legatee to take under a will or by a collateral distribution in case of intestacy, and is not a tax on tangible property merely because the amount of the tax is measured in its relation to the value of the corporate property as a whole, and is regarded as in the nature of a ransom or toll levied upon the right to transmit or receive the shares occasioned by the death of the former owner.

**4. Corporations—Taxation—Shares of Stock—Inheritance Tax—Charter.**

A State creating a corporation has the power to impose an inheritance tax upon the transfer by will or devolution of the stock of such corporation held by a nonresident at the time of his death, by reason of its authority to determine the basis of organization and the rights and liabilities of all of its shareholders therein.

**5. Constitutional Law—Statutes—Corporations—Taxation—Inheritance Tax.**

Every presumption is in favor of the constitutionality of a statute, and the legal fiction that shares of stock, being personal property, is considered as being with the person of a nonresident shareholder, will not be so construed as to invalidate a statute taxing its transfer as an inheritance tax.

**6. Corporations—Shares—Courts—Jurisdiction—Status of Shareholders.**

A certificate of stock is a written acknowledgment by a corporation of the interest of the holder in its property and franchise, the legal status of which is in the nature of a chose in action, and the value of the shares is measured by the value of all the property owned by the corporation, including its franchise, entitling him to his proportionate share of the profits during its continuance, and to his *pro rata* share in its net assets upon its dissolution.

**7. Corporations—Shareholders—Statutes—Public Policy.**

It is the policy of this State, since 1887, as ascertained by the interpretation of our statutes on the subject, to regard the interest of a stockholder in a domestic corporation, for the purpose of taxation, as identical with that of the corporation.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Cranmer, J.,* at March Term, 1923, of WAKE.

Civil action to recover the amount of an inheritance tax, or transfer tax, paid by plaintiff under protest and sought to be regained by this suit.

From a judgment as of nonsuit, or one denying recovery, the plaintiff appeals.

*Tillinghast & Collins, Pou, Bailey & Pou, and Colin McRae Make-peace for plaintiff.*

*Attorney-General Manning and Assistant Attorney-General Nash for defendant.*

STACY, J.   The Rhode Island Hospital Trust Company, of Providence, Rhode Island, executor under the will of George Briggs, deceased, brings this suit to recover of the defendant, Commissioner of Revenue of North Carolina, the sum of $2,658.85, being the amount exacted by the defendant and paid by the plaintiff, involuntarily and under protest, by way of an inheritance tax, or a transfer tax, on shares of stock owned by decedent, at the time of his death, in the R. J. Reynolds Tobacco Company, a corporation chartered under the laws of the State of New Jersey and domesticated in the State of North Carolina under C. S., 1181, with its principal place of business in this State and with two-thirds of the total value of its property located herein.   The said corporation maintains a transfer office in the city of New York, and the paper certificates representing the shares of stock owned by the decedent at the time of his death have never been in this State.   George Briggs was not a resident of North Carolina, but during his lifetime, or at least the latter part thereof, he resided in the State of Rhode Island and was a citizen of that State at the time of his death, 29 October, 1919.   None of the beneficiaries under his will live in North Carolina.   The question, therefore, directly presented is whether the Legislature of this State can impose an inheritance tax, or a transfer tax, upon the right of nonresident legatees or distributees to take by will or to receive under the intestate laws of another State, from a nonresident testator or intestate, shares of stock in the R. J. Reynolds Tobacco Company, and to require the payment of such tax as a condition precedent to the right to have said stock transferred on the books of the corporation.   A satisfactory answer to this question would seem to necessitate an examination into the basic character of the tax imposed.

But, before entering upon an investigation of this nature, we observe a suggestion by the plaintiff that the statute in question (chapter 90, Public Laws 1919, now C. S., 7772 *et seq.*) does not warrant the interpretation placed upon it by the defendant and the State Tax Commission.   This position, on the argument, was not made the subject of serious debate.   Indeed, we think there is but little room for construction.   The statute undertakes to impose an inheritance tax upon the transfer of all real and personal property of every kind and description, and "such property or any part thereof or interest therein within this State" which shall pass by will or by operation of law from a testator

to his legatees or devisees, or from an intestate to his heirs or distributees; and section 6, in part, provides:

"The words, 'such property or any part thereof or interest therein within this State,' shall include in its meaning bonds and shares of stock in any incorporated company, incorporated in any other State or country, when such incorporated company is the owner of property in this State, and if 50 per cent or more of its property is located in this State, and when bonds or shares of stock in any such company not incorporated in this State, and owning property in this State, are transferred by inheritance, the valuation upon which the tax shall be computed, shall be the proportion of the total value of such bonds or shares which the property owned by such company in this State bears to the total property owned by such company, and the exemptions allowed shall be the proportion of exemption allowed by this act, as related to the total value of the property of the decedent."

It is clear, we think, from the language used, that the Legislature intended to levy the tax imposed and which is sought to be recovered in this suit.

Plaintiff's next position is, that if the law is to be construed so as to authorize an imposition of the tax in question, then the statute is unconstitutional, both under Article I, section 17, of the State Constitution and also under the Fourteenth Amendment to the Constitution of the United States. This brings us to a consideration of the nature of the tax in dispute.

There has been, and still is, some slight difference of opinion among courts as to the exact nature of an inheritance tax. It is agreed, however, that such a tax is levied, not upon the property itself, but upon its transfer, change of ownership, or devolution. The principal difference arises over the question as to whether the tax is laid on the privilege of transmitting property or on the privilege of receiving the property so transmitted. *Prentiss v. Eisner,* 267 Fed., 16. The former is sometimes called a transmission tax, or legacy tax, while the latter is usually styled a succession tax. But in each instance it is generally conceded that the tribute or contribution exacted before the property can pass from the dead to the living, or from the testator to the objects of his bounty, has some of the characteristics of an excise or custom duty. It is a ransom, or toll, levied upon the right to transmit, or upon the right to receive property, the transmission or receipt of which is occasioned by death. *In re Inman,* 199 Pac. (Or.), 615; 16 A. L. R., 675.

In this State the particular tax now in question is imposed upon the right of succession. "We do not regard the tax in question as a tax on property, but rather as a tax imposed on the succession—on the right of a legatee to take under the will, or of a collateral distribution in the

case of intestacy. . . . Neither can it be held a tax on property merely because the amount of the tax is measured by the value of the property." *Rodman, J.,* in *Pullen v. Comrs.,* 66 N. C., p. 363.

"The theory on which taxation of this kind on the devolution of estates is based and its legality upheld is clearly established and is founded upon two principles: (1) A succession tax is a tax on the right of succession to property, and not on the property itself. (2) The right to take property by devise or descent is not one of the natural rights of man, but is the creature of the law." *Brown, J.,* in *In re Morris Estate,* 138 N. C., p. 262. See, also, *Corp. Com. v. Dunn,* 174 N. C., 679; *Norris v. Durfey,* 168 N. C., 321; *In re Inheritance Tax,* 168 N. C., 356; *S. v. Bridgers,* 161 N. C., 247.

It clearly appears, we think, from the language of the statute under which the present tax is imposed, that the Legislature intended to levy an inheritance tax, with certain exceptions, on the succession or devolution of all real and personal property of every kind and description within the jurisdiction of the State, and upon any interest therein, whether owned by a resident or nonresident at the time of his death.

It is universally conceded that a State may levy an inheritance tax on the transfer by will or devolution of all property within the power of its reach, whether such property be real or personal, tangible or intangible, corporeal or incorporeal. *Hooper v. Shaw,* 176 Mass., 190; *Morrow v. Durant,* 118 N. W. (Ia.), 781; *Neilson v. Russell,* 69 Atl. (N. J.), 476; *Plummer v. Coler,* 178 U. S., 115; note 127, A. S. R., 1059; 26 R. C. L., 208. Construing the succession-tax law of Massachusetts, *Knowlton, C. J.,* in *Kinney v. Stevens,* 207 Mass., 368, said: "This language indicates an intention on the part of the Legislature to tax all property that it has the power to tax. The statute is as broad as the jurisdiction of the commonwealth." And the same may be said of the North Carolina statute.

It is equally well established that a State tax on property must be limited to property within the territorial jurisdiction of the State. "Property situated without that jurisdiction is beyond the State's taxing power, and the exaction of a tax upon it is in violation of the Fourteenth Amendment to the Constitution." *Metropolitan Life Ins. Co. v. New Orleans,* 205 U. S., 395; *Wallace v. Hines,* 253 U. S., 66; *Western Union Tel. Co. v. Kansas,* 116 U. S., 1; *Tappan v. Merchants Nat. Bank,* 19 Wall., 490.

But the tax now under consideration is not a direct tax on property. It is a tax imposed upon the transfer, transaction, or right of succession, and is merely measured in amount by the value of the property transferred. *S. v. Bullen,* 143 Wis., 512; *Magoun v. Bank,* 170 U. S., 298; *U. S. v. Perkins,* 163 U. S., 625; *Nettleton's Appeal,* 76 Conn.,

242; *Thompson v. Kidd,* 74 N. H., 92; *Minot v. Winthrop,* 162 Mass., 118; *S. v. Hamlin,* 86 Me., 503. It "has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy." *New York Trust Co. v. Eisner,* 256 U. S., 345.

"As to residents, the transfer tax is on the succession, and is imposed on the right of succession; but, as to nonresidents, it is a tax on the transfer of property within the jurisdiction of the Court." *Patterson, J.,* in *In re Bishop,* 81 N. Y. Sup., 474.

Undoubtedly, the State has power to levy an inheritance tax in respect to all property upon which it has power to impose an ordinary property tax, and in addition thereto it has the power to impose a succession tax in respect to certain property upon which it cannot levy an ordinary property tax. *State ex rel. Graff v. Probate Court,* 128 Minn., 371. For example, no State, in the exercise of its general power of taxation, can levy a direct tax on obligations of the United States, and yet a legacy of United States bonds is not exempted from the inheritance-tax laws of a State, because such tax is not laid on the bonds themselves, but on the right to acquire them by will, or by devolution in case of intestacy. *Plummer v. Coler,* 178 U. S., 115. So, also, a State may tax the inheritance of its own bonds or bonds of municipal corporations, though it expressly provided, when the bonds were issued, that they should be exempt from taxation. *Orr v. Gilman,* 183 U. S., 278.

The tax in question being upon the right of succession and not upon the property transferred or received, it is not subject to the constitutional limitations with respect to uniformity and equality, nor is it a "direct tax," within the meaning of the Constitution of the United States. *Scholey v. Rew,* 23 Wall., 331; 26 R. C. L., 196. "Whether an inheritance tax shall be laid or not, and the rate thereof, and the exemptions allowed, are matters which rest in the power and discretion of the law-making department." *Clark, C. J.,* in *Corp. Com. v. Dunn,* 174 N. C., p. 681.

"A succession tax is not a property tax upon the privilege of receiving property by intestate or testate succession. It is in the strict sense an excise tax. It is like a transfer or other excise taxes. It need not be proportional under our Constitution. It is not subject to the restrictions and limitations which attach to property taxes under the Federal Constitution. (Citing authorities.) Excise or succession taxes may be measured, in part at least, by the value of property which is exempt from taxation, such as government bonds, merchandise in bond, and other like tax-exempt property." *Rugg, C. J.,* in *Welch v. Treasurer,* 223 Mass., 87.

The personal property of a decedent, whatever its character and wherever located, is subject to an inheritance tax in the State in which

its owner was a resident at the time of his death. *Bullen v. Wisconsin,* 240 U. S., 625. This position is upheld upon the principle that the *situs* of personal property, for the purpose of taxation, is said to be in the State where the owner resides and has his domicile. *Mobilia sequuntur personam.* *Gallup's appeal,* 76 Conn., 617; *In re Swift,* 137 N. Y., 77; *People v. Union Trust Co.,* 255 Ill., 168; *McCurdy v. McCurdy,* 197 Mass., 248; *In re Hartman,* 70 N. J., Eq., 664.

In *Frothingham v. Shaw,* 175 Mass., 59, a resident of Massachusetts died, owning stocks and bonds of foreign corporations and money in bank in the State of New York. An inheritance tax imposed by the domiciliary State on the personal property in New York was assailed upon the ground that this personal property was not "property within the jurisdiction of the commonwealth of Massachusetts." And, further, that the succession as to this property in New York took place under the laws of that State and not under the laws of Massachusetts. Speaking to these two contentions, the Court said:

"1. In arriving at the amount of the tax, the property within the jurisdiction of the commonwealth is considered, and we see no reason for supposing that the Legislature intended to depart from the principle heretofore adopted, which regards personal property for the purposes of taxation as having a *situs* at the domicile of its owner.

"2. The petitioners further contend that the succession took place by virtue of the law of New York. But it is settled that the succession to movable property is governed by the law of the owner's domicile at the time of his death. This, it has been often said, is the universal rule, and applies to movables wherever situated. . . . If there are movables in a foreign country, the law of the domicile is given an extraterritorial effect by the courts of that country, and in a just and proper sense the succession is said to take place by force of, and to be governed by, the law of the domicile. Accordingly, it has been held that legacy and succession duties as such were payable at the place of domicile in respect to movable property, wherever situated, because in such cases the succession or legacy took effect by virtue of the law of domicile."

See, also, *In re Helena,* 236 Pa., 213, as reported in 46 L. R. A. (N. S.), 1167, where a wealth of information on the subject will be found in the valuable and exhaustive note compiled by the annotator.

Among the classes of personal property, the succession to which it has been held may be taxed at the domicile of the owner, are shares of stock in foreign corporations. *In re Hodges,* 170 Cal., 492; *In re Bullen,* 143 Wis., 512; *Hawley v. Malden,* 232 U. S., 1.

On the other hand, the State creating a corporation has the power to impose an inheritance tax upon the transfer, by will or devolution, of the stock of such corporation held by a nonresident at the time of his

death; and this by virtue of the authority of the chartering State to determine the basis of organization and the liability of all of its shareholders. *Corry v. Baltimore,* 196 U. S., 466; *Moody v. Shaw,* 173 Mass., 205; *In re Culver,* 145 Iowa, 1; *People v. Griffith,* 245 Ill., 532; *Dixon v. Russell,* 78 N. J. L., 296; *In re Bronson,* 150 N. Y., 1; *In re Whiting,* 150 N. Y., 27; 26 R. C. L., 216. Speaking to this question, in *Greves v. Shaw,* 173 Mass., 205, *Knowlton, J.,* said: "Such a corporation, being in a sense a citizen of this State, and having an abiding place here akin to the domicile of a natural person, is subject to the jurisdiction of the commonwealth, and is in fact with the commonwealth. The stockholders are the proprietors of the corporation, which is itself the proprietor of the property owned and used for the ultimate benefit of the stockholders. While the corporation has a full and complete legal title to the corporate property, its ownership is in a sense fiduciary; for, on winding up its affairs, the surplus, after the payment of debts, must be divided among the stockholders," citing *Fisher v. Essex Bank,* 5 Gray, 373-377; *Field v. Pierce,* 102 Mass., 253; *Graham v. LaCrosse & Milwaukee R. R.,* 102 U. S., 148; *Hollins v. Brierfield Coal & Iron Co.,* 150 U. S., 371.

Thus it is seen that, under the fiction of *mobilia sequuntur personam,* the universal succession may be taxed in one State—the domiciliary State—while, according to the fact of power, the singular succession may be taxed in another. *Knowlton v. Moore,* 178 U. S., 53; *Coe v. Errol,* 116 U. S., 517. As said in *Hartman's case,* 70 N. J. Eq., p. 667: "The great weight of authority favors the principle adopted by the New York Court of Appeals, holding that the tax imposed is on the right of succession under a will, or by devolution in case of intestacy; and that, as to personal property, its *situs,* for the purpose of a legacy or succession tax, is the domicile of the decedent, and the right to its imposition is not affected by the statute of a foreign State which subjects to similar taxation such portion of the personal estate of any nonresident testator or intestate as he may take and leave there for safe-keeping, or until it should suit his convenience to carry it away."

Animadverting upon this situation in *Blackstone v. Miller,* 188 U. S., 189, *Mr. Justice Holmes* remarked: "No one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the *situs* accepts its rules of succession from the law of the domicile, or that by the law of the domicile the chattel is part of a *universilas* and is taken into account again in the succession tax there. (Citing authorities.)

"No doubt, this power on the part of two States to tax on different and more or less inconsistent principles leads to some hardship. It may be regretted also that one and the same State should be seen taxing on

the one hand according to the fact of power, and on the other, at the same time, according to the fiction that, in successions ⸱ after death, *mobilia sequuntur personam* and domicile governs the whole. But these inconsistencies infringe no rule of constitutional law."

Again, in *Kidd v. Alabama,* 188 U. S., 730, the same learned justice took occasion to say: "No doubt, it would be a great advantage to the country and to the individual States if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided."

Every presumption is indulged in favor of the validity, or constitutionality, of an act of the law-making body; and hence the courts do not hesitate to disregard the maxim, *mobilia sequuntur personam,* where fiction runs counter to fact, or to resort to it in order to uphold a statute. And, though this may lead inevitably to double taxation, it apparently violates no constitutional provision. *Mann v. Carter,* 74 N. H., 345; 15 L. R. A. ⸱(N. S.), 150; *In re Hodges,* 170 Cal., ·492. In the case of *In re Whiting,* 150 N. Y., 27, *Vann, J.,* in construing a succession-tax statute, and speaking for the Court, said: "Thus the Legislature intended, as I think, to repeal the maxim, *mobilia personam sequuntur,* so far as it was an obstacle, and to leave it unchanged so far as it was an aid, to the imposition of a transfer tax upon all property in any respect subject to· the laws of this State."

"For certain purposes, the maxim of the common law was '*mobilia sequuntur personam,*' but that maxim was never of universal application and seldom interfered with the right of taxation." *Mr. Justice Brewer,* in *Adams Express Co. v. Auditor,* 166 U. S., 185.

Under the New York statute, prior to the amendment of 1911, bonds of a foreign corporation, as well as bonds and certificates of stock of domestic corporations, when deposited in a safe-deposit vault within that State, and owned by a nonresident, were held to be "property within the State" and subject to an inheritance tax, although, so far as appears, they were present merely for safe-keeping. *In re Whiting, supra;* 26 R. C. L., 214. See, also, *Wheeler v. Sohmer,* 233 U. S., 434.

"It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicile of the owner. . . . Notes and mortgages are of the same nature. . . . We see no reason why a State may not declare that, if found within its limits, they shall be subject to taxation." *Mr. Justice Brewer,* in *New Orleans v. Stempel,* 175 U. S., 309.

"Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more than archaic

conditions," says *Mr. Justice Holmes,* in *Blackstone v. Miller, supra,* a case in which the question presented was whether the State of New York had the right to tax a transfer by will of personal property in that State owned by a testator who had died domiciled in Illinois, and where the whole estate, including the property in New York, had been taxed in the domiciliary State of Illinois. The New York statute was upheld and the tax imposed thereunder sustained.

The common-law rule that personal property follows the person (hence its name) and has its *situs* at the domicile of the owner, is a legal fiction which must give way, in matters of taxation, to the real facts of the case. *Green v. Van Buskirk,* 7 Wall., 139; *St. Louis v. Wiggins Ferry Co.,* 11 Wall., 423. It has been doubted by some as to whether this rule ever had any just application to shares of stock in incorporated companies, which, for most purposes, must be controlled by the *lex loci* of the corporation. Story on Conflict of Laws (7 ed.), secs. 364, 383, and authorities cited; *Kidd v. Alabama, supra.* "And in States bound together by a constitution and subject to the Fourteenth Amendment, great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact." *McDonald v. Mabee,* 243 U. S., 90.

A certificate of stock is simply a written acknowledgment by a corporation of the interest of the holder in its property and franchises. It has no value, except that derived from the company issuing it, and its legal status is in the nature of a chose in action. The value of all the property owned by a corporation, of whatever kind, including its franchise, is the true and fair measure of the value of all of its stock. When it is said that a person owns a certain number of shares of stock in a corporation, it is meant that such person has a right to participate in the profits of the corporation, and in its property on dissolution, after payment of its debts, in the proportion that the number of his shares bears to the whole capital stock. Clark on Corporations, ch. 10; *R. R. v. Comrs.,* 87 N. C., 426; *Redmond v. Comrs.,* 87 N. C., 122.

That the stock of a corporation has no intrinsic value separate and apart from the property of the corporation is clearly shown from what is said in *Gibbons v. Mahon,* 136 U. S., 549, and *Towne v. Eisner,* 245 U. S., 418, relative to a stock dividend:

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. After such a dividend, as before, the corporation has the title in all the corporate property; the aggregate interests therein of all the shareholders are represented by the whole number of shares, and the proportional interest of each shareholder remains the same. The only change is in the evi-

dence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of new ones. . . . In short, the corporation is no poorer and the stockholder is no richer than they were before." See, also, *Logan County v. U. S.,* 169 U. S., 255.

But more directly to the point at issue is the language of *Chief Justice Chase,* in *Van Allen v. The Assessors,* 70 U. S., 598:

"It is true that the shareholder has no right to the possession of any part of the corporate property while the corporation exists and its affairs are honestly managed. He has committed his interest, for a time, to the possession and control of the corporation of which he is a member, and he has only a member's voice in the management of it.

"So a man who has leased a farm has no right to possession or control during the lease; but who denies his property in the farm? And if a dozen owners join in the lease, has not each one an interest in the property to the extent of one-twelfth?

"So, if for the time the property of the shareholder is placed beyond his direct control and converted into property of the association, how can that circumstance affect the intrinsic character of his shares as shares of the whole corporate property? How can a man's shares of any property be the subject of valuation at all if not with reference to the amount and productiveness of the property of which they are a part? What value can they have except that given them by that amount and that productiveness? A certificate of title to a share is not a share. It is evidence of the shareholder's interest. His interest may be transferred by the transfer of the certificate; but it is not the certificate that is valued when the worth of the share is estimated either by the speculator in the market or by the tax assessor. It is the property which it represents that is valued by the speculator, often with reference to speculation only, but by the public officer, always, if he does his duty, by the real worth of the property, all things considered."

To like effect is the language of *Gray, J.,* in the case of *In re Branson,* 150 N. Y., 8:

"The shareholders are persons who are interested in the operation of the corporate property and franchises, and their shares actually represent undivided interests in the corporate enterprise. The corporation has the legal title to all the properties acquired and appurtenant; but it holds them for the pecuniary benefit of those persons who hold the capital stock. They appoint the persons to manage its affairs; they have the right to share in surplus earnings, and, after dissolution, they have the right to have the assets reduced to money and to have them ratably distributed. Each share represents a distinct interest in the whole of the corporate property. As said in *Jermain v. L. S. and M.*

*S. R. Co.* (91 N. Y., 492), it 'represents the interest which the share-holder has in the capital and net earnings of the corporation'; or, as *Parke, B.,* put it, in *Bradley v. Holdsworth* (3 M. & W., at p. 424), it is 'a right to have a share of the net produce of all the property of the company.' Corporate shares must be regarded as property within the broad meaning of that term. Certificates of stock, in the hands of their holder, represent the number of shares which the corporation acknowledges that he is entitled to. In legal contemplation the property of the shareholder is either where the corporation exists, or at his domicile; accordingly as it is considered to consist in his contractual rights, or in his proprietary interest in the corporation. . . . Hence it cannot be said, if the property represented by a share of stock has its legal *situs* either where the corporation exists or at the holder's domicile, as we have said in the *Enston* and *James cases* (*In re Enston,* 113 N. Y., 181; *In re James,* 144 *id.,* 12), that the State is without jurisdiction over it for taxation purposes. As personalty, the legal *situs* does follow the person of the owner; but the property is in his right to share in the net produce and, eventually, in the net residuum of the corporate assets, resulting from liquidation. That right as a chose in action must necessarily follow the shareholder's person; but that does not exclude the idea that the property, as to which the right relates and which is, in effect, a distinct interest in the corporate property, is not within the jurisdiction of the State for the purpose of assessment upon its transfer through the operation of any law, or of the act of its owner."

See, also, quotation from *Knowlton, J.,* in *Greves v. Shaw, supra.*

It has been held that the owner of shares of stock in a corporation, organized for pecuniary profit, has an insurable interest in the corporate property—any qualified interest or any interest in the subject-matter being an insurable interest. *Warren v. Ins. Co.,* 31 Iowa, 464; *Seeman v. Ins. Co.,* 21 Fed., 778; *Ætna F. Ins. Co. v. Kennedy,* 161 Ala., 600. See, also, *Batts v. Sullivan,* 182 N. C., 129.

The basis of the rule making a corporation a distinct entity and the reasons for departing from such rule will be found in 14 C. J., 59: "Although the doctrine that a corporation is a legal entity and person in the law distinct from the members who compose it, will always be recognized and given effect, both at law and in equity, in cases which are within its reason and when there is no controlling reason against it, and although in some cases it seems to have been given effect contrary to reason, it is clear that a corporation is in fact a collection of individuals who, in the case of modern private corporations, really own its property and carry on the corporate business, through the corporation and its officers and agents, for their own profit or benefit, and that the idea of the corporation as a legal entity or person apart from

its members is a mere fiction of the law introduced for convenience in conducting the business in this privileged way; and it is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law."

It has been the policy of the Legislature of this State since 1887 to treat the interest of a stockholder in a domestic corporation, for purposes of taxation, as identical with that of the corporation; and hence an individual stockholder is not required to list his shares of stock for taxation where the State has already exercised the right to tax such shares through the corporation itself, or "at its source," as it is sometimes called. Speaking of this identification of the capital stock of a domestic corporation in the hands of a shareholder, with the property of the corporation, *for purposes of taxation, Adams, J., in Person v. Watts,* 184 N. C., 499, said:

"So, by virtue of the statute, there is nothing of value possessed by a corporation that is allowed to escape taxation. Certainly there can be no doubt that the shareholder's 'investment' is taxed as the Constitution requires. The truth is, the certificate of stock represents the shareholder's investment in the corporation as the landowner's deed represents his investment in the land. If the land is taxed, why tax the deed? If the capital stock is taxed, why tax the certificates which represent the capital stock? No doubt the Legislature possesses the power to repeal the statute and to tax both; no doubt it possesses the power to devise a system of taxation that would be more burdensome to all classes, but if the Constitution does not require it, why should such additional burden be imposed? It is not denied that shares of stock in a restricted sense are the individual property of the owner, and in such sense may be considered as separate from the capital stock. The holder may sell his certificate without the consent of the company, but in doing so he sells only his interest in the corporation. His interest as a shareholder may become adverse to that of the corporation, but by investing in the capital stock he parts with the individual control of his money. It is only in this limited sense that shares of stock are separate from the corporation. In a broader and more real sense the interest of the shareholder is inseparable from that of the corporation. In the larger sense there is but one property, for shares of stock have value only as the taxed property of the corporation has value. During his lifetime the owner can derive no income from his shares unless the business of the corporation earns a profit; and upon his death, when his personal property passes to his distributee, it is not the certificate that is subject to an inheritance tax, but under a special statute the

TRUST CO. *v.* DOUGHTON.

value of the owner's interest in the corporation represented by the certificate, just as such tax is assessed, not upon the deed, but upon the value of the land which descends from the ancestor to the heir. It seems, therefore, to be unquestionable that if the corporation be required to pay a tax on the capital stock as it is valued under the statute, and the shareholders a similar tax on all their shares, double the amount of the money or property contributed by the shareholders is thereby taxed, and no play upon words can escape the logic of this conclusion. The Constitution neither forbids nor requires double taxation, but the Legislature has refrained from levying the double tax. The Constitution requires that investments in stocks shall be taxed, but it does not forbid the exemption of shares from taxation when the capital stock itself is taxed. And as the controversy turns upon the validity or invalidity of the statutory exemption of shares of stock, it is apparent that the question whether taxing the individual shares as well as the capital stock is called double taxation is not as affecting the merits of the appeal a matter of material concern."

This same rule is extended to certain foreign corporations, and is applicable to the R. J. Reynolds Tobacco Company (of which its resident stockholders have taken advantage), as witness the following provision in the general revenue law: "Nor shall any individual stockholder of any foreign corporation be required to list or pay taxes on any share of its capital stock if two-thirds in value of its entire property is situated and taxed in the State of North Carolina, or if such corporation has tangible assets within this State assessed for taxation at a value exceeding the par value of the total stock owned by citizens of this State, and the said corporation pays franchise tax on its entire issued and outstanding capital stock at the same rate as paid by domestic corporations."

Thus it will be seen that, for all practical purposes, so far as the question of taxation is concerned, the R. J. Reynolds Tobacco Company stands on substantially the same footing as a domestic corporation. It has come into the State upon this condition and accepted the benefit of our laws. It has domesticated here.

Applying the principle above stated to the instant case, it is apparent, we think, that the Legislature intended to put aside the fiction of separate interests between the corporation and its shareholders and to impose an inheritance tax upon the transfer by will or devolution of the interests of nonresident stockholders in corporations, chartered in any other State or country, "when such incorporated company is the owner of property in this State, and if 50 per cent or more of its property is located in this State." Unless this view is to prevail, a corporation, created under the laws of another State, may come into North

Carolina, with all of its property located here and protected by our laws, with its entire business carried on in this State, and yet the holdings of every nonresident stockholder would be exempt from our inheritance-tax laws. It was the purpose of the Legislature to prevent such a contingency or possibility.

The foregoing considerations distinguish the case at bar from those cited and relied upon by appellant; but, if not entirely so, we must decline to follow them, as we think the act in question is constitutional.

The transfer now under consideration took place certainly by the permission and under the ultimate protection, if not by the direct operation, of our laws. *Thomas v. Matthiessen,* 232 U. S., 235; 58 L. Ed., 577. To point out the various differences between the authorities cited and the instant case would only be a work of supererogation. The alpha and omega of every case must be determined by the facts. We cite the authorities chiefly relied upon by appellant, all of which have been carefully scrutinized: *Tyler v. Dane County,* 289 Fed., 843; *In re McMullen's Estate,* 192 N. Y. Sup., 49; *In re Harkness Estate,* 83 Okla., 107; 204 Pac., 911; *S. v. Dunlop,* 28 Idaho, 784; 56 Pac., 1141; *Welch v. Burrill,* 223 Mass., 87; 111 N. E., 774; *Oakman v. Small,* 282 Ill., 360; 118 N. E., 775; *People v. Griffith,* 245 Ill., 532; 92 N. E., 313; *People v. Dennett,* 276 Ill., 43; 114 N. E., 493.

The cases of *S. v. Brim,* 57 N. C., 300, and *Evans v. Monot,* 57 N. C., 228, are not at variance with our present position.

There is still another ground upon which the authority of a State to levy an inheritance tax has been upheld, namely, the necessity of resorting to the courts of the State to enforce a right acquired from a nonresident decedent. *In re Houdayer,* 150 N. Y., 37. Deposits in a bank belonging to a nonresident owner at the time of his death and debts due from a resident to the estate of a nonresident decedent may be subjected to an inheritance tax in the State of the debtor's residence, in the latter case or where the bank is located in the former, notwithstanding the established legal fiction that the *situs* of a debt is usually at the residence of the creditor, for it is ordinarily at the residence of the debtor, if at all, that the debt may be enforced. *Blackstone v. Miller,* 188 U. S., 189; *Bliss v. Bliss,* 221 Mass., 201; *In re Rogers,* 149 Mich., 305. Contra: *Gilbertson v. Oliver,* 129 Ia., 568.

The rights incident to a share of stock in a corporation—to partake of the surplus profits of the corporation, and ultimately, on its dissolution, to participate in the distribution of its assets, after payment of its debts—can be maintained and enforced only in the jurisdiction where the property of the corporation is situated. True these rights, in the instant case, might be asserted in the Federal courts; but in its final analysis the rights of the parties would be determined, in a measure

at least, by the laws of North Carolina. Speaking to a similar question in *Bliss v. Bliss,* 221 Mass., 201, it was said: "The bonds could not be collected by any process in the courts except by invoking Massachusetts law."

But it is contended that if the present assessment be sustained it will result in requiring the payment of two or three taxes of like character by the same legatees for the one right of succession to the property in question. This unfortunate situation, if it be true, cannot control the determination of the question presented, for such a condition frequently arises, and while its presence always induces most careful consideration on the part of the courts, it must be submitted to unless it can be avoided under settled rules relating to the subject, especially in the face of a positive declaration by the law-making department. "Great constitutional provisions must be administered with caution. Some play must be allowed for the joints of the machine, and it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts." *Missouri T. and K. Ry. Co. v. May,* 194 U. S., 267.

It is further suggested that the Legislature of 1923, realizing the hardship occasioned by situations like the present, has modified the provisions of the law now under consideration; but if so, this cannot avail the plaintiff in the instant case. The testator died 29 October, 1919, while the provisions of the 1919 statute were in full force and effect.

From the foregoing we conclude (1) that the defendant and the State Tax Commission have properly construed chapter 90, Public Laws 1919, as imposing the tax now in question, and (2) that the said act is constitutional.

The judgment of the Superior Court will be upheld.

Affirmed.

## ADDENDUM.

Since the argument of this case and the preparation of the opinion, our attention has been called to a decision of the Supreme Court of Wisconsin, *Shepard v. State* and *Shepard v. Harper, Public Administrator,* decided 12 February, 1924, in which the conclusions reached by the United States District Court in the case of *Tyler v. Dane County, supra,* are sanctioned and approved. There are certain fundamental differences which distinguish this case, as well as the other authorities cited by plaintiff, from the case at bar. In the first place, Wisconsin, for all purposes, unlike North Carolina for purposes of taxation, adheres to the doctrine of separate and distinct interests between the capital of a corporation and its capital stock. "Such has been and still is the settled law of this State, and it is beyond the power of the Court

to alter it even if it so desired," says the Wisconsin Court. For some purposes, this distinction is very important, especially in dealing with the relative rights, *inter se,* of the corporation and its shareholders; but for purposes of taxation, we think it is within the power of the Legislature to treat the pro rata interest of a stockholder in the corporate property as identical with that of the corporation, or simply as a share in the corporate entity. *Person v. Watts,* 184 N. C., 516, 517. Such was the direct holding of this Court in *Parks v. Express Co.,* 185 N. C., 428. To paraphrase the language of *Chief Justice Clark* in that case, appearing on page 433, it may be said here: In the present case the R. J. Reynolds Tobacco Company, though incorporated in New Jersey, is doing business in this State and is subject to its jurisdiction. The shares of stock held by the decedent at the time of his death in that company was an obligation of the company to its stockholder. It was the "property of the stockholder in the hands of the company doing business here."

The question as presented to us is not one of policy for the courts, but one of power for the Legislature. It is peculiarly the function of the law-making body to levy assessments and to devise a scheme of taxation. *Trust Co. v. McFall,* 128 Tenn., 645. In the second place, the R. J. Reynolds Tobacco Company has its principal place of business in this State, with two-thirds of the total value of its entire property located herein, and for all practical purposes, so far as the question of taxation is concerned, it stands on substantially the same footing as a domestic corporation. It is domesticated here. Similar conditions were not presented in any of the cases cited and relied upon by appellant.

CLARK, C. J., dissenting: It is difficult to understand upon what principle of constitutional law it can be legally provided that if the Reynolds Tobacco Company, a New Jersey corporation, but doing business here, had 66 2-3 of the total value of its property located in this State, the estate of the decedent, domiciled in Rhode Island and who has never even been in this State, must pay an inheritance tax of $2,658.85 on the stock which he owned in said company; but if the said Reynolds Tobacco Company had paid taxes on 66 1-3 only of its property located in this State, the decedent's estate would have been liable to not one cent of inheritance tax.

The Constitution of this State, Art. V, sec. 3, which guarantees equality and uniformity of taxation as a protection to the weaker and less influential part of our people from oppression by over-taxation caused by the exemption of other property from taxation, provides as follows: *"Taxes shall be by uniform rule and ad valorem: Laws shall*

*be passed taxing, by uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies or otherwise; and, also, all real and personal property according to its true value in money."*

In *Person v. Watts,* 184 N. C., 499, the majority of this Court held, at bottom of page 508, that while the Legislature could require the individual stockholder residing here, and therefore receiving the benefit of the protection of our laws, to pay on his shares of stock, the Court could not enforce this provision of the Constitution of equal and uniform taxation, and in the later case of *Person v. Doughton,* 186 N. C., 723, by a divided Court, it was held that the Court could not enforce the taxation of shares of stock in corporations outside the State though held by stockholders in this State.

It is therefore inexplicable how the State has jurisdiction to tax the property of the estate of this decedent who resided in Rhode Island and had no property here, or tax its devolution by the laws of the domicile of the owner over which this State can have no control.

By the decision in *Person v. Watts, supra,* there was held exempted from the uniform taxation which is clearly required by the Constitution, on a fair estimate, at least 1,500 million dollars of domestic stocks owned in this State, and by the decision in *Person v. Doughton,* 186 N. C., 723, the Court again disclaimed the right to require the taxation of over 200 million dollars on a fair estimate of foreign stocks owned by residents and taxpayers in this State. The uniform and ad valorem taxation required by the Constitution upon these immense amounts invested by shareholders in the stocks of railroads, water-power companies, banks and other corporations would have vastly reduced the rate of taxation upon all other property in the State and would have complied with the requirement of the constitutional provision subjecting *"all investments in stocks"* to the same uniform rate of taxation required of all investments in lands, livestock and other property which the decision in *Person v. Watts* (bottom of page 508) expressly states that the Legislature *could* have required to be taxed.

It has always been contended since *Madison v. Marbury* that when the statute does not conform to the constitutional requirements the courts will hold it invalid to that extent. In the present case the decedent, whose estate is taxed $2,658.85, has never been in this State, and it is more than difficult to see how the State acquires jurisdiction over his property when it cannot enforce the constitutional requirement of equal and uniform taxation as to investments in stocks owned by residents of this State to the extent of nearly 2,000 million dollars "invested in stocks," domestic and foreign.

The decedent owned no property here. The stock, the title to which was in the decedent, followed his person according to the well-settled

principles of law. In *Pullen v. Corporation Commission,* 152 N. C., 553, *Manning, J.,* said: "It is likewise well settled by the language of our State Constitution, by many decisions of this Court and of the Supreme Court of the United States, and is now generally accepted law that the property of a shareholder of a corporation in its shares of stock is a *separate and distinct* species of property from the property, whether real, personal, or mixed, held and owned by the corporation itself as a legal entity. It would be useless to cite authority to support a proposition so well established and generally accepted." Therefore it follows that the decedent as a shareholder in the Reynolds Company had no property here, and we can neither tax it nor its devolution.

*Brown, J.,* in the same case, concurring, says, at page 562: "I agree, also, that it is well settled that the shares of stock in any corporation, when owned by individuals, are separate and distinct property from the assets of the corporation and may be taxed as such."

In the same case, *Hoke, J.,* at page 582, quoting from *Bank v. Tenn.,* 161 Tenn., 146: "The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders, are two *distinct pieces of property.* The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation. *Van Allen v. Assessors,* 70 U. S. (3 Wall.), 244, cited in *Farrington v. Tenn.,* 95 U. S., 678. This statement has been reiterated many times in various decisions by this Court, and is not now disputed by any one."

A later case, *Brown v. Jackson,* 179 N. C., 363, 371 (1920), cites and approves the above cases. In our own Court there are many other cases to the same effect. *Comrs. v. Tobacco Co.,* 116 N. C., 446; *Chief Justice Smith* in *Belo v. Comrs.,* 82 N. C., 415 (33 Am. Reports, 668), and *Ashe, J.,* in *Worth v. R. R.,* 89 N. C., 291. There are other cases exactly in point and should be followed.

The law as above stated is also clearly summed up to the same effect in 37 Cyc., 758, 759, that "the capital stock of a corporation and the shares in which it is divided are separate and distinct interests and each of a taxable character," citing numerous cases from Alabama, Georgia, Illinois, Indiana, Iowa, Kentucky, North Carolina, Ohio, Tennessee, Virginia, Washington, and the U. S. Supreme Court (see notes on pages 758, 759), and on page 759 it is further said: "Shares of stock in a foreign corporation held by resident owners may be taxed to them without regard to the taxation of the capital or property of the corporation at the place of its domicile"; citing cases from California, Georgia, Iowa, Kentucky, Maryland, Massachusetts, Minnesota, Ohio, and Rhode Island.

In the same volume (37 Cyc.), 821, it is said: "Since the capital of a corporation, which is its property, is a distinct and separate thing from the interest of stockholders, represented by the shares they severally hold, and since the principle which forbids double taxation is not violated, at least according to decisions in many States, by assessing the capital to the corporations and the shares to their holders, it follows that shares of stock in a domestic or foreign corporation may properly be assessed for taxation to their holder at the place of his domicile, irrespective of taxation which may be imposed on the corporation itself in respect to its capital or franchise," citing cases from California, Connecticut, Illinois, Iowa, Kentucky, Louisiana, Maryland, Missouri, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, Washington, and the U. S. Supreme Court.

To the same purport, 14 Corpus Juris., 387, 388, secs. 509 and 510, says: "Although shares of stock are intangible and rest in abstract legal contemplation, they nevertheless are property—a species of incorporeal property, consisting in rights in the proceeds, management and assets of the company, so that they may be the subject of conversion and have the other incidents of property"; citing cases from the U. S. Supreme Court, Alabama, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Utah, Virginia, and West Virginia, and says further (section 510): "Contrary to the early opinion in the case of corporations owning real estate, it is now very generally agreed that shares of stock in corporations are personal property, whether they are declared to be such by statute as is sometimes the case, or not, and whether the property of the corporation itself is real, as in the case of mining companies, land companies, railroad companies, canal companies and the like, or only personal," citing decisions from the U. S. Supreme Court, Alabama, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Washington, West Virginia, Wisconsin, and England.

Also to the same effect, 26 Ruling Case Law, p. 184 (sec. 155), says: "An individual may be taxed in the State in which he lives on shares of stock in either domestic or foreign corporations," and at page 290 says: "It is recognized that the property of the shareholders in their respective shares is distinct from the corporate property, franchises and capital stock and may be separately taxed although the property and franchises of the corporation are also taxed where they are situ-

ated," and adds, citing *Smith, C. J.,* in *Belo v. Commissioners,* 82
N. C., 415; 33 Am. Reports, 688: "So, also, the shares of stock are
taxable to the owners, even if the capital stock of the corporation is
exempt from taxation by law." And in the same volume (26 R. C. L.),
at page 289 (sec. 254), it says: "Shares of stock in corporations are a
species of intangible personal property which may be taxed to the indi-
vidual owner in the State in which he resides, whether the corporation
is domestic or foreign, even if the corporation does no business and
owns no property in such State," citing numerous cases.

As the devolution of the shares of stock in the R. J. Reynolds Com-
pany belonging to the decedent Briggs passed by operation of the laws
of the State where he died domiciled, and the persons to whom it should
pass by operation of law or the power to convey it by will is solely
under the control of the State of Rhode Island, it is difficult to see
what authority North Carolina has to tax such devolution or interfere
with it in any way. If this State could tax the right of devolution
at all, it could tax it 100 per cent, for there is no provision in the Con-
stitution which limits the amount of inheritance tax.

If, however, it should be held that the shares of stock are the prop-
erty of the corporation, it has already been taxed under the majority
decisions in *Person v. Watts* and *Person v. Doughton, supra,* and there
has been no devolution of his property which can be taxed by this State.

Such devolution of his property is made subject to the laws of the
domicile, and if it is the property of the corporation, the transfer upon
the books of the Reynolds Company is purely a matter of shifting its
own property under its own regulations.

In *Evans v. Monot* (1858), 57 N. C., 227, *Pearson, C. J.,* says: "A
share of the stock of the corporation is a thing incorporeal, a money
right which entitles the owner to participate in the general manage-
ment of the concerns of the corporation by being a member in the meet-
ing of the stockholders to elect officers and do other acts of the kind;
to demand or receive from the corporation a portion of whatever may
be on hand at its dissolution." The distinction between ownership of
shares of stock of a corporation and ownership of the property of a
corporation is a fundamental concept of the law of corporations. The
corporation is an entity like a natural person, and the title to its prop-
erty is vested in it and not in the stockholders. 5 Fletcher on Corpora-
tions, sec. 3433; Cook on Corporations (6 ed.), sec. 12, and cases there
cited. This in fact is the fundamental idea of a corporation. The
stockholders are not liable for its debts, and it is not liable to theirs.
While a majority of the stockholders can control the corporation, it
is a separate and distinct entity.

When a resident of this State invests a sum, whether in livestock or corporation stock, he is liable to taxation thereon, but when a nonresident invests in the stock of a corporation located here he has no property liable to taxation in this jurisdiction. Nor can he be taxed here for an inheritance tax when a nonresident.

In a late case, *Welch v. Burrill* (1916), 223 Mass., 87, the Court said: "It is impossible to predicate jurisdiction over nonresident shareholders in a foreign corporation merely upon the physical presence of property belonging to that corporation within the territory of the State. . . . That State has no jurisdiction to impose a tax upon such succession. The privilege or commodity of passing title to the stock is the thing which is taxed. That requires no sanction of the laws of that (other) State (where the corporation operates) for its complete and effective legal transition from ancestor to heir or testator to legatee." That is, this State has no authority to impose the inheritance tax upon the Briggs estate, he being a resident of Rhode Island, simply because he owned stock in a corporation of New Jersey doing business here and which passed to his legatee or next of kin without the permission or act of this State.

If this State could impose a tax upon the legal devolution of the shares of stock of a nonresident, it could make that tax 100 per cent and turn the whole amount into the treasury of this State.

In another recent case, *In re McMullan's Estate* (1922), 199 App. (N. Y.) Div., 393; 192 N. Y. Supp., 49, the Court said on this very point, at page 53:

"It has already been pointed out that the State cannot enforce a tax upon the transfer of shares of stock of a foreign corporation owned by a nonresident decedent, where neither the corporation nor the owner is within its jurisdiction. Of course, a foreign corporation owning real property located in this State may be subjected to a tax, so far as such property is concerned, upon the ground that the real property in this State constitutes a *res,* over which the State and its courts may entertain jurisdiction. But this jurisdiction would not apply to a nonresident stockholder of such foreign corporation, for the reason that he is not an owner of the real estate."

It should be noted that this was not the case of the construction of a statute to determine whether the property taxed was property within the State, but was a question as to whether a tax could be levied by an express statute on the transfer of stock of a nonresident decedent in a foreign corporation owning real estate within New York, which is exactly the case here, and the Court held that there was no jurisdiction in the State (Illinois) of the foreign corporation to levy such tax. This case has been affirmed by the New York Court of Appeals.

In short, it may be said that the decisions are uniform that a State has no jurisdiction to impose an inheritance tax on the transfer of stock of a foreign corporation owned by a nonresident decedent merely because the corporation owns property within the State. Numerous authorities to that effect can be cited, but as it is understood this case will be taken to the U. S. Supreme Court, it is unnecessary to encumber the record with such citations.

In *People v. Dennett* (1916), 276 Ill., 43, it is said: "The relation of the stockholder to the property of the corporation has been so long settled by uniform decisions that it is no longer the subject of discussion. The owner of shares of stock in a corporation is not the owner of the property or of any share of the property of the corporation, in any legal sense. The stockholders of a corporation completely organized do not hold the relation of partners, and they have neither legal nor equitable title to the property of the corporation."

There are some States whose constitutions do not require, like the Constitution of this State, that "all moneys, credits, investments in *bonds, stocks,* joint-stock companies or otherwise, and also all real and personal property, according to its true value in money," shall be taxed by uniform rule and ad valorem. In some, but not in all of these, the influence of the great corporations and of holders of large blocks of stock has been sufficient to secure the exemption of stocks and bonds from all taxation, but it is believed that this has not been held in any State whose constitution has the same provision as ours, requiring the equal and uniform taxation of all property.

This provision in our Constitution was for the protection of those who, not having idle capital to invest in stocks and bonds, are now forced to pay not only taxes upon their own property, but that which should be borne by this immense amount of capital invested in "stocks" and bonds which has been made "tax free." By legitimate deduction from the statistics of the U. S. Income Tax Report there is, as above stated, nearly or quite two thousand millions of dollars invested in stocks of corporations by residents here, and also probably three thousand millions in bonds which is absolutely withdrawn from any taxation whatever, thus made "tax free" by the influence and for the benefit of its owners and to the cost of all others. If, according to the requirement of our Constitution, this immense wealth was taxed equally with investments in livestock, real estate and other property, the wealth-producing property of the community would probably pay less than half of the present burden which is borne by its owners. The tax thereon should be paid by the large holders of this wealth who are equally protected by the laws in their persons and property but who now are exempted from any share thereon of the burden of government and the protection they receive.

"*Investments* in bonds and stocks" being the individual property of the holders thereof, the holders if residents here are taxable thereon, irrespective whether the stock they hold is in corporations incorporated or operated in this State or elsewhere. These stocks are their property, bought with their money or inherited, subject by proper proceeding to payment of their debts, and to be bequeathed or sold at their will.

It is small compensation for the loss of the taxation upon this immense volume of wealth to attempt to reach out and tax the devolution by death or will of the same kind of property—investments in stocks and bonds—of a nonresident who has received no protection or benefit from our State Government. Whatever protection the company and its property have received presumably has been paid by the property of the corporation here which has been protected, but the nonresident holder of the shares does not owe the State anything. The resident holder of shares of stock, whether domestic or foreign, has been protected in his person and his property, and therefore should pay his fair share of the burdens of the State, county, and municipal governments.

The majority opinion in *Person v. Watts,* 184 N. C., at bottom of page 508, admits that the Legislature *can* tax the shares in the hands of its owners, but the language of the Constitution is that the Legislature *shall* pass laws taxing uniformly and ad valorem all property, specifically reciting therein "investments in stocks and bonds," and such "investments" every one knows are made by the buyer and not by the corporation that issues the stocks and bonds. The word *"Investment" ex vi termini,* shows that the holder has invested his money in such property, and the Constitution requires that he shall be taxed on that investment. He is here and has had the benefit of the protection of himself and his property; the investment is recited in the Constitution as property to be taxed uniformly like all others. But the decedent Briggs did not live here, he had no property here. By his death his shares passed by his will or by the statute in the State where he resided. The corporation was here and has been taxed on its property. It is true that when a resident here holds stocks in corporations in another State, such corporations may have paid tax on its property there, but his property, that is, the shares which he can control and sell and receive money for, are here, and he as a holder of such property has been protected and should pay his share of the expenses of the government under which he lives.

Our Constitution imperatively requires that the Legislature shall pass laws taxing by uniform rule and ad valorem all property, and further specifies in section 5 of the same article what property may be exempted. The statute before us exempts an immense amount of property belonging to those who have idle wealth and not within the list

of the property which by Constitution, Art. V, sec. 5, can be exempted. The question before us is which shall govern—the Constitution or the statute. The statute for many years taxed all investments in stock as the Constitution requires, and the opinion in *Person v. Watts, supra,* says the Legislature can do so now even if it were styled "double taxation" by those wishing to escape all taxation on it. It is no compensation to those thus required to pay the taxes from which "Big Wealth" is unconstitutionally exempted to seek out and collect small amounts from nonresident shareholders, when we are exempting the many millions belonging to resident shareholders.

To exempt from taxation the above enormous investments in stocks and the still larger investment in bonds owned by citizens and residents here, who are protected in their persons and property, by the taxation collected from other citizens whose burdens would be much reduced by the uniform taxation of these investments in stocks and bonds, which the Constitution requires, and to hold that the decedent in Rhode Island, over whom and his property we have no jurisdiction, can be forced to pay the petty sum involved in this litigation, would seem similar to the instance in the Scriptures—which is quoted with reverence—"like straining at a gnat and swallowing a camel."

The consequence of our system of making the stocks and bonds of great accumulations of capital "tax free," and necessarily "double taxing" all other property, is a great rush of money to invest in "tax-free" stocks and a great pressure for the issuance of bonds that capital may also be invested in "tax-free" bonds. The result is a scarcity of money for use by those who need it for the improvement of farm lands and otherwise, and application to Congress for the creation of land banks and other devices by which ultimately the owners of farm lands may become mere tenants at will of their creditors.

It is true that the great corporations have great influence and can use it to procure favorable legislation by making their stocks "tax free" in open defiance of the Constitution, but the Constitution was provided for the very purpose of prescribing rules of equality and justice which should not be infringed by any great monetary or other influence, and should be upheld by the courts.

In *R. R. v. Comrs.,* 91 N. C., 454, it is held that "a nonresident holder of shares of a corporation in this State is not liable to tax here. Such property is beyond the jurisdiction of the State and subject only to that in which the holder has a domicile."

The decisions in *Person v. Watts, supra,* and *Person v. Doughton, supra,* went off upon the proposition that a *mandamus* would not lie in such case though there are many decisions that it will lie. See cases cited in 184 N. C., at pp. 538-541; but aside from that, if the Court had held that the failure to observe the vital constitutional requirement

that all property, including "investments in stocks and bonds," should be taxed equally and uniformly was invalid, it cannot be doubted that the Legislature would have remedied the defect. In any view the failure to collect taxes on the immense amount invested by residents of this State in stocks and bonds, domestic and foreign, cannot be remedied by taxing nonresidents upon the small amount of stocks held by them in corporations doing business in this State as this act attempts to do. We shall do our duty if we tax residents of this State and the property of nonresidents if found here.